**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TOKIO MARINE AMERICA INSURANCE COMPANY, a/s/o ITOCHU LOGISTICS (USA) CORP., | : | |
| | : | |
| *Plaintiffs*, | : | Civil No. 2:17-cv-07491 (KSH) (JAD) |
| v. | : | |
| | : | |
| JAN PACKAGING, McCOLLISTER'S TRANSPORTATION SYSTEMS, INC., BALA TRANSPORT CORP., KING TRANSPORT LLC, NOLAN TRANSPORTATION GROUP, and COURIER SYSTEMS, | : | **Opinion** |
| | : | |
| *Defendants,* | : | |
| AND | : | |
| JAN PACKAGING, | : | |
| *Defendant / Third-Party Plaintiff,* | : | |
| v. | : | |
| NOLAN TRANSPORTATION GROUP, McCOLLISTER'S TRANSPORTATION SYSTEMS, INC. and MASTHEAD INTERNATIONAL, INC., | : | |
| *Third-Party Defendants.* | : | |

**Katharine S. Hayden, U.S.D.J.**

Defendant / third-party plaintiff Jan Packaging has brought this third-party action against third-party defendants McCollister's Transportation Systems, Inc. ("MTS"), Nolan Transportation Group, and Masthead International, Inc. based on allegations of liability under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706 (Count One), along with state law claims for defense, indemnity, and contribution (Count Two), breach of contract and/or quasi-contract (Count Three), and negligence (Count Four).  All counts were filed against Nolan Transportation; Counts Two and Four were filed against Masthead; and Counts One, Two, and Four were filed against MTS.  Currently before the Court is MTS's motion to dismiss Counts One, Two, and Four for lack of standing under the Carmack Amendment and failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## I.    BACKGROUND

Intel Corporation, a company headquartered in California, sold certain computer chip manufacturing equipment to Hangzhou Silan Integrated Circuit Company, a company headquartered in China.  (D.E. 7, FAC ¶ 12.)  Silan hired Kingpoint Technology to oversee shipment of the equipment from the United States to China.  (*Id.* ¶ 13.)  Kingpoint, in turn, hired Itochu Logistics (USA) Corporation to arrange for the shipment.  (*Id.* ¶ 14.)  Plaintiff Tokio Marine America Insurance Company issued an insurance policy to Itochu that covered Itochu's liability for any damage to the equipment caused by others who assumed responsibility for delivering it in good condition.  (*Id.* ¶ 16.)

Itochu hired MTS, Bala Transport Corporation, King Transport Corporation, Nolan Transportation, and Jan Packaging to transport the equipment from Massachusetts to New Jersey by motor carriage.  (*Id.* ¶ 17.)  Itochu also hired Jan Packaging and Courier Systems to repackage the goods in New Jersey for ocean shipment to China.  (*Id.*)  In Massachusetts, MTS, Bala Transport, King Transport, Nolan Transportation, and Jan Packaging received all the equipment in good condition, but two units were damaged upon arrival in New Jersey.  (*Id.* ¶¶ 18-20.)  Kingpoint sued Itochu for the damage and, under the terms of the insurance policy, Tokio Marine paid out $504,840 to Kingpoint to settle the claim.  (*Id.* ¶¶ 23, 30.)

On September 27, 2017, Tokio Marine brought this action against MTS, Bala Transport, King Transport, Nolan Transportation, Jan Packaging, and Courier Systems to recover the settlement payments, as well as costs of suit and other relief. Days later, due to a filing error, Tokio Marine filed its first amended complaint, which MTS and Jan Packaging moved to dismiss.  (D.E. 11, 12).  On November 7, 2017, Tokio Marine voluntarily dismissed MTS with prejudice (D.E. 16, 17), and on December 4, 2017, the Court denied Jan Packaging's motion (D.E. 22, 23).

On January 9, 2018, Jan Packaging filed a third-party complaint (D.E. 26) against Nolan Transportation and then on August 1, 2019, Jan Packaging filed a motion for leave to amend to add MTS and Masthead as third-party defendants (D.E. 53).  On September 18, 2019, Jan Packaging filed a second amended third-party complaint alleging that at all relevant times: MTS and Nolan Transportation acted as

motor carriers for the transportation of the computer chip manufacturing equipment in interstate commerce; Tokio Marine and/or Jan Packaging had a "Contract of Carriage" with MTS and Nolan Transportation to transport the equipment from Massachusetts to New Jersey; Nolan Transportation breached its contract by failing to secure qualified motor carriers to transport the equipment; MTS and Nolan Transportation negligently hired unqualified carriers and breached their duty of care to load and secure the equipment in a manner to prevent damage during transportation; and the equipment was damaged while in MTS and Nolan Transportation's care, custody, and control. (D.E. 58 ¶¶ 2-6, 19-24.)

On October 8, 2019, Nolan Transportation filed an answer and crossclaims against Bala Transport and Masthead for contribution and/or indemnification. (D.E. 63.) On October 16, 2019, MTS filed the instant motion to dismiss Jan Packaging's claims against it for lack of standing under the Carmack Amendment and failure to state a claim under Fed. R. Civ. P. 12(b)(6). The motion is fully briefed (D.E. 64, 68, 69) and the Court decides it without oral argument. *See* L. Civ. R. 78.1.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, a court must take all allegations in the complaint as true and view

them in the light most favorable to the plaintiff. *See New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Phillips*, 515 F.3d at 232 (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief" (citation omitted)). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

The facial plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678.

In deciding a Rule 12(b)(6) motion, a court may consider the complaint, any exhibits attached to the complaint, matters of public record, as well as undisputedly

5

authentic documents if the complaint's claims are based upon those documents.

*Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III.   ANALYSIS

MTS first argues that Jan Packaging lacks standing to pursue a claim under the

Carmack Amendment because the second amended third-party complaint failed to

allege facts that Jan Packaging is classifiable as an entity with a beneficial interest in

the shipment of the damaged equipment.  Second, MTS argues that Jan Packaging's

state law claims asserted in Counts Two and Four are expressly preempted by the

Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C. §

14501.  In opposing, Jan Packaging does not address the preemption argument.

Turning first to standing, the Carmack Amendment regulates the relationship

between shipping carriers and the owners of goods being shipped and imposes strict

liability on those carriers for goods lost or damaged in interstate commerce.  *See*

*Sanofi-Aventis U.S., LLC v. Great Am. Lines, Inc.*, 718 F. App'x 110, 112 (3d Cir. 2017)

(citing 49 U.S.C. § 14706).  The Carmack Amendment requires a motor carrier to

issue a receipt or bill of lading for the property it transports.  49 U.S.C. § 14706(a)(1).

The carrier is then "liable to the person entitled to recover under the receipt or bill of

lading" for any loss or injury to the property caused by any carrier during shipment.

*Id.*  Interpreting the Carmack Amendment, decisions in this district limit standing to

"shippers or consignors, holders of the bill of lading issued by the carrier or persons

beneficially interested in the shipment although not in possession of the actual bill of

lading, buyers or consignees, or assignees thereof." *Harrah v. Minn. Mining & Mfg. Co.*, 809 F. Supp. 313, 318 (D.N.J. 1992) (Bissell, J.).

According to MTS, to the extent the equipment in question was damaged, Jan Packaging did not suffer any loss and has no right to recover for damages to Tokio Marine's goods pursuant to the Carmack Amendment under the facts presented. MTS argues that neither Tokio Marine's first amended complaint nor Jan Packaging's second amended third-party complaint identify any specific transaction or bill of lading or indicate the extent or nature of damage, the date(s) of loss, the time of delivery, or any other distinguishing information that would assist in determining the nature of Jan Packaging's claims. Hovering over these arguments is a litigation event that MTS believes prompted this third-party action: Tokio Marine dismissed it with prejudice as a defendant in the underlying lawsuit, and Jan Packaging is trying to bring MTS back in with its Carmack Amendment and state law claims.

In opposing, Jan Packaging directs the Court's attention to two separate "contracts of carriage," purportedly issued by MTS that identify Jan Packaging as both a "consignor" – a person or entity from whom goods are received for shipment, – and a "consignee" – a person or entity to whom the goods are to be delivered. (D.E. 68-1, Ex. A.) Insofar as these documents are prerequisites to standing, and indeed specify it as a consignor and consignee, Jan Packaging argues that under *Harrah* and decisions in accord, standing is established.

In its reply brief, MTS argues that Jan Packaging fails to indicate whether those contracts of carriage are associated with any of the losses alleged by Tokio Marine in this action. In addition, MTS relies on three cases to support the argument that when determining the right of a party to recover under a bill of lading, courts are concerned with the actual roles played by the entities in interest, not with mere listings. First, in *One Beacon Insurance Co. v. Haas Industries, Inc.*, 634 F.3d 1092 (9th Cir. 2011), the Ninth Circuit recognized that although members of certain classes will be entitled to sue under the Carmack Amendment, there is a "crucial phrase" in the statute that provides a "direct approach to standing[:] . . . 'the person entitled to recover *under the receipt or bill of lading*.'" *Id.* at 1098 (quoting 49 U.S.C. § 14706(a)(1)). There, the court looked to a definition on the bill of lading that governed the shipment of goods at issue, "rather than an abstract classification system," to determine that the owner of lost goods qualified as a "shipper" who had standing to sue under the Carmack Amendment even though the owner did not negotiate any shipping arrangements or appear on the bill of lading. *Id.*

Next, MTS relies on *Banos v. Eckerd Corp.*, 997 F. Supp. 756 (E.D. La. 1998). In that case, the Eastern District of Louisiana looked to Black's Law Dictionary for its definition of "consignor," and held that because the owner of goods qualified as an entity "from whom the goods have been received for shipment," she had standing to sue for the damages to and/or loss of her property despite not appearing on the bill of lading. *Id.* at 762. The third case MTS relies on is from this district court. In

*Harrah v. Minnesota Mining and Manufacturing Co.*, the court also looked to Black's Law Dictionary for its definition of "consignee." Despite the fact that the owner of goods did not negotiate the shipping arrangements or execute a bill of lading for the return of his property, the court held that he had standing to sue under the Carmack Amendment because he was "the one to whom the carrier was supposed to make delivery." 809 F. Supp. at 318.

MTS also argues that any identifications of Jan Packaging on any bill of lading is irrelevant because Jan Packaging was not, and never claimed to be, an owner, shipper, consignor, or consignee of the damaged equipment at issue in this case. As MTS points out, Jan Packaging has identified itself as a motor carrier since the onset of this case. In its earlier motion to dismiss Tokio Marine's complaint, for example, Jan Packaging states: "*As a motor carrier*, Jan Packaging was hired by [Tokio Marine's] insured, Itochu, *as a motor carrier* to transport goods from Massachusetts to New Jersey," and, "Jan Packaging was hired to make multiple interstate trips between Massachusetts and New Jersey . . . ." (D.E. 11-1 at 2 (emphasis added).) MTS further points out that Jan Packaging's second amended third-party complaint fails to reflect any fact that would identify it as a consignor, consignee, or as having any beneficial interest in any of the shipments at issue.

The Court agrees. In the second amended third-party complaint, Jan Packaging alleges that: "At all relevant times, Plaintiff and/or Defendant/Third-Party Plaintiff, Jan Packaging, had a Contract of Carriage with McCollister's Transportation Systems,

Inc. to transport certain goods of the Plaintiff's in interstate commerce from

Massachusetts to New Jersey." (SATPC ¶ 5.) However, Jan Packaging did not

include any governing documents as exhibits for consideration. Only in opposing the

motion to dismiss did Jan Packaging use the contracts of carriage listing it as

consignor and consignee to describe its role. Without more, all Jan Packaging offers

(now, as opposed to in the complaint) are contracts of carriage that may or may not

have governed the shipments of goods at issue in this case. There are no factual

allegations that Jan Packaging performed as a consignor or consignee or otherwise

participated in the shipping arrangements as an entity with any beneficial interest in

the equipment. Therefore, the foregoing would indicate that Jan Packaging – as a

motor carrier hired to load and transport goods from Massachusetts to New Jersey

and repackage those goods for subsequent shipment to China – lacks standing after

the goods suffered damage to bring an action under the Carmack Amendment as a

party "*entitled to recover under the receipt or bill of lading . . .* for the actual loss or injury to

the property." 49 U.S.C. § 14706(a)(1) (emphasis added). Accordingly, the motion to

dismiss Count One is granted.

Turning to preemption, MTS argues that the FAAAA expressly preempts Jan

Packaging's state law claims for defense, indemnity, contribution, and negligence.

Express preemption exists "when Congress includes in a statute explicit language

stating an intent to preempt conflicting state law." *Deweese v. Nat'l R.R. Passenger Corp.*

*(Amtrak)*, 590 F.3d 239, 245 (3d Cir. 2009).

Pursuant to the FAAAA, "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to a price, route, or service of any motor carrier* . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 § 14501(c)(1) (emphasis added). "The FAAAA's preemption clause prohibits enforcement of state laws 'related to a price, route, or service of any motor carrier . . . with respect to the transportation of property.'" *Dan's City Used Cards, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (quoting 49 U.S.C. § 14501(c)(1)). State laws are not preempted, however, where their relationship with carrier rates, routes, or services are "tenuous, remote, or peripheral." *Id.* at 261.

MTS cites to *Huntington Operating Corp. v. Sybonney Express, Inc.*, 2010 WL 1930087 (S.D. Tex. May 11, 2010), for its contention that Jan Packaging's state law claims are expressly preempted by the FAAAA. In *Huntington*, the plaintiff, an importer/exporter, brought claims for violations of the Texas Deceptive Trade Practices Act, negligence, negligent misrepresentation, and breach of contract against a shipping broker after a shipment of goods was stolen during transport from Florida to Texas. In that case, the defendant argued that the FAAAA preempts all claims founded in state statute or common law, except for breach of contract. The plaintiff opposed and pointed out that the FAAAA "shall not restrict . . . the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization[.]"

*Id.* at *3 (quoting 49 U.S.C. § 14501(c)(2)(A)). The district court noted that the provisions of the FAAAA closely parallel those found in the Airline Deregulation Act and that courts have interpreted the preemptive scope of the FAAAA in accordance with case law addressing the ADA. Accordingly, in holding that the FAAAA "broadly preempts state law claims that would regulate interstate transportation of goods," the court dismissed all but the plaintiff's breach of contract claim. *Id.*

MTS also argues that claims sounding in equity, including indemnity and contribution, are likewise preempted under the FAAAA, and directs the Court's attention to *Nature's One, Inc. v. Spring Hill Jersey Cheese, Inc.*, 2017 WL 4349065 (S.D. Ohio Sept. 29, 2017). There, the plaintiff, a manufacturer, brought claims against a motor carrier for indemnity and contribution based on the carrier's alleged negligence in failing to prevent contamination to a shipment of milk. The court concluded that because the plaintiff's claims alleged negligence in the carrier's performance of its services, they were preempted under the "expansive" scope of the FAAAA as relating "to a price route, or service of *any motor carrier*." *Id.* at *6-8 (quoting 49 § 14501(c)(1)).

Jan Packaging fails to address this argument. Courts in this District have held this omission to be fatal to the nonmovant. *See Griglak v. CTX Mortg. Co., LLC*, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010) (Cooper, J.) ("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count."); *Duran v. Equifirst Corp.*, 2010 WL 936199, at *3 (D.N.J. Mar. 12, 2010) (Martini , J.) ("The absence of argument constitutes waiver in

regard to the issue left unaddressed, and that waives the individual counts themselves.").

Even were Jan Packaging's silence not construed as a waiver, Counts Two and Four relate to motor carrier services that gave rise to this action and are therefore preempted by the FAAAA. The negligence claim is based upon alleged actions taken by MTS, Nolan Transportation, and Masthead to transport the equipment from Massachusetts to New Jersey by motor carriage. For example, Jan Packaging alleges that MTS negligently hired unfit and unqualified motor carriers to transport the goods and breached its duty of care to load and secure all shipments in a manner to prevent damage. Further, Jan Packaging claims that it was MTS's negligence as a motor carrier that directly and proximately caused the damages it suffered.

The claims for defense, indemnity, and contribution likewise relate to the motor carrier services provided. Jan Packaging alleges that, in the event it is held liable to Tokio Marine for any loss or damage to the equipment, such liability was caused or brought about by the acts or omissions of MTS. Similarly, Jan Packaging claims to be entitled to contribution in the amount corresponding to the proportion of MTS's fault as a motor carrier.

Because Jan Packaging's state law claims all hinge on MTS's alleged negligence in performing its services as a motor carrier, Counts Two and Four are preempted under the FAAAA as "relat[ing] to a price, route, or service of any motor carrier . . .

with respect to the transportation of property." 49 § 14501(c)(1). Accordingly, the motion to dismiss Counts Two and Four is granted.

## IV.   CONCLUSION

For the reasons stated above, the Court grants MTS's motion to dismiss. (D.E. 64.) Jan Packaging lacks standing to pursue relief under the Carmack Amendment as alleged in Count One, and federal preemption law under the FAAAA bars its state law claims asserted in Counts Two and Four. An appropriate order will be entered.

/s/ Katharine S. Hayden

Katharine S. Hayden, U.S.D.J.

Date: December 18, 2020